

**FILED**

AUG 1 6 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 09-26849-C-11 |
| CWS ENTERPRISES, INC., | Adversary No. 09-2686 |
| Debtor(s). | DC No. PA-1 |
| CWS ENTERPRISES, INC., by David Flemmer, its Chapter 11 Trustee, | |
| Plaintiff(s), | |
| v. | |
| FREIDBERG & PARKER, a Law Corporation, | |
| Defendant(s). | |

**MEMORANDUM DECISION**

The defendant, Freidberg & Parker, has filed an Emergency Motion for Approval of Supersedeas Cash Bond for Stay Pending Appeal. For the reasons explained herein, the motion will be denied.

**FACTS**

The facts are derived from the record of the various proceedings in the parent chapter 11 case, In re CWS Enterprises, Inc., No. 2009-26849, in which a chapter 11 trustee is serving, and its companion case, In re Charles W. Siller, No. 2009-26167, in which the debtor remains in possession.

This court's decision published as In re Siller, 427 B.R. 872 (Bankr. E.D. Cal. 2010), sets forth pertinent background regarding the creation of CWS Enterprises as part of a settlement of a $45.7 million judgment in favor of Charles W. Siller in

1    corporate dissolution litigation involving Siller's 40 percent
2    interest in Siller Brothers, Inc., that was achieved while on
3    appeal by way of a compromise to have a tax-advantaged spinoff
4    agreed upon through the appellate mediation program of the
5    California Third District Court of Appeals.

6        The salient point is that CWS Enterprises was created as a
7    entity to receive property worth about $30.5 million from Siller
8    Brothers, Inc., in a Section 355 spinoff under the U.S. Internal
9    Revenue Code.  The property spun off to CWS Enterprises consisted
10   of a variety of assets, most of which are illiquid real
11   properties dedicated to agricultural purposes.  While the precise
12   value of the property has not formally been established for
13   purposes of these reorganizations, a retired California judge
14   acting as a JAMS arbitrator in the dispute that was the subject
15   of this court's prior published opinion pegged the value of the
16   property at $30.5 million.  Siller, 427 B.R. at 877.  There has
17   been no credible indication in the course of these reorganization
18   proceedings that the value noted by the JAMS arbitrator
19   materially overstates the value of the property now owned by CWS
20   Enterprises.

21       These chapter 11 cases were filed in order to deal with
22   demands by various attorneys for fees totaling as much as $18
23   million.  The fees are contested as to amount and in some cases
24   (including the movant herein) as to liability and amount.  Since
25   the CWS Enterprises assets are illiquid, funds are not
26   immediately available to pay fees.

27       The structure of probable plans of reorganization is also
28   apparent because the property that forms the substantial majority

- 2 -

of the CWS Enterprises property pegged at $30.5 million is not encumbered.  The ultimate total of debts likely will be less than the $18 million that has been demanded (there already have been two significant compromises).  Payment will be funded by selling parcels of real property sufficient to pay all of the debts.  As of the day this motion was taken as submitted, no specific properties were on the market.

Pursuant to a compromise approved by this court on March 9, 2011, and not appealed, the chapter 11 trustee is required to pay the lead counsel in the trial that actually resulted in the $45.7 million judgment an initial payment of $3.75 million on or before December 15, 2011, followed by $2.5 million (plus interest at 6 percent from December 15, 2011) on or before March 15, 2012.

The funds potentially immediately available to make the initial $3.75 million settlement payment by December 15, 2011, consist of the $4 million on deposit in a blocked account with respect to which the trustee has made a Motion for Authority to Access and Disburse Funds from Blocked Account No. 1240.

The $4 million blocked account was placed in a blocked status following the turnover by First American Title Co. to the chapter 11 trustee of undisbursed funds remaining from the closing of the Section 355 spinoff transaction.

The account was blocked because the instant movant Freidberg & Parker claimed to have a secured interest in the $4 million fund either by way of a security interest under Article 9 of the Uniform Commercial Code or by way of an equitable lien.

This adversary proceeding by the chapter 11 trustee against Freidberg & Parker includes counts challenging secured status and

- 3 -

1 | questioning liability and amount.

2 This court was persuaded by the parties to try the adversary
3 proceeding in phases, beginning with the question of secured
4 status.   That first phase of the trial resulted in an
5 interlocutory order entered on docket June 24, 2011, determining
6 that Freidberg & Parker does not have an enforceable security
7 interest in the $4 million blocked account.   The order is
8 interlocutory because this court declined to make the
9 determinations required by Federal Rule of Civil Procedure 54(b),
10 incorporated by Federal Rule of Bankruptcy Procedure 7054(a),
11 that are necessary to enter a judgment that is final for purposes
12 of appeal.

13 Freidberg & Parker has filed a notice of appeal, together
14 with a motion for leave to appeal pursuant to Federal Rule of
15 Bankruptcy Procedure 8003, which motion this court understands to
16 be pending in the United States District Court.

17

18 **DISCUSSION**

19 The purpose of this motion is to have this court approve a
20 $50,000 "supersedeas" cash bond in order to prevent the chapter
21 11 trustee from having the funds to make the $3.75 million
22 payment that must be made by December 15, 2011.   If granted, the
23 chapter 11 trustee would be required immediately to place on the
24 market and sell one or more real estate parcels in a transaction
25 that closes by December 15, 2011.

26 Although there is not yet an appeal in the first instance
27 because the district court has not yet granted, might not grant
28 (electing to wait until finality sets in) leave to appeal, the

- 4 -

1  stay question will be addressed as if there is a pending appeal.

2      A key factor to bear in mind is that, under the economic

3  facts of these cases, ample assets independent of the $4 million

4  blocked account are available to pay whatever amount, if any, is

5  ultimately determined to be owed to Freidberg & Parker.

6

7                                    I

8      At the threshold, there is a question whether an

9  interlocutory order determining that a party is not entitled to

10 secured status is appropriate for the type of supersedeas cash

11 bond that is available as a matter of right.  The order on appeal

12 is not a money judgment, and the supersedeas bonds that are

13 available as a matter of right are classically reserved for money

14 judgments.

15     The classic supersedeas bond is a non-discretionary, matter-

16 of-right stay of money judgments that must be in sufficient

17 amount to cover the unsatisfied judgment, costs on appeal,

18 interest, and damages for delay.  Wymer v. Wymer (In re Wymer), 5

19 B.R. 802, 805 (9th Cir. 1980).

20     The terms of a supersedeas bond formerly were set forth in

21 Federal Rule of Civil Procedure 73(d), which was deleted upon the

22 adoption of the Federal Rules of Appellate Procedure in 1967.

23 The concepts, however, retain vitality.  Wymer, 5 B.R. at 805.

24     Under former Rule 73(d), a supersedeas bond was required to

25 "be conditioned for the satisfaction of the judgment in full

26 together with costs, interest and damages for delay, if for any

27 reason the appeal is dismissed or if the judgment is affirmed,

28 and to satisfy in full such modification of the judgment and such

                                - 5 -

1  costs, interest, and damages as the appellate court may adjudge
2  and award." Fed. R. Civ. P. 73(d) (abrogated Dec. 4, 1967, eff.
3  July 1, 1968).

4     The insurmountable problem in this case is that there is not
5  a money judgment.  Thus, a matter-of-right supersedeas bond is
6  not available.

7     If such a bond were to be available, the proposed $50,000 is
8  plainly inadequate to satisfy the damages-for-delay criterion.

9     The appropriate amount would be at least $2.5 million solely
10  on account of the damages-for-delay criterion for the following
11  reasons.  The consequence of granting a supersedeas bond would be
12  to force a distress sale of real property that must close within
13  four months in order to raise the $3.75 million due to be paid
14  pursuant to the court-approved compromise by December 15, 2011.
15  In this court's experience, such a sale of difficult-to-market
16  agricultural property without a reasonable period for marketing
17  can yield a discount of as much as 40 percent of the true market
18  value that would be achieved with a reasonable marketing period.
19  Thus, in order to raise $3.75 million by December 15, the chapter
20  11 trustee would need to sell property worth as much as $6.25
21  million (= $3.75 million ÷ .60).  It follows that the appropriate
22  bond would be $2.5 million (= $6.25 million - $3.75 million).

23     Although a matter-of-right supersedeas bond should be at
24  least $2.5 million, such a matter-of-right bond is not available
25  in this instance, as a matter of law.

26

27                  II

28     The meaning of supersedeas bond has evolved since 1967 to

include bonds in connection with discretionary stays.  This court
has discretion to – i.e., "may" – impose a stay pending appeal
"on such terms as will protect the rights of all parties in
interest."  Fed. R. Bankr. P. 8005; Hagel v. Drummond (In re
Hagel), 184 B.R. 793, 798-99 (9th Cir. BAP 1995).  Similarly,
Rule 62(d) uses the term supersedeas bond in terms – "may" – that
leave a court with discretion to grant or deny such a stay.  Fed.
R. Civ. P. 62(d), incorporated by Fed. R. Bankr. P. 7062.  Such a
stay is sometimes termed a discretionary supersedeas bond.
Wymer, 5 B.R. at 805-06.

        The standards governing imposition of discretionary stays
in general focus on a balance that takes into account whether the
appellant is likely to succeed on the merits of the appeal,
whether appellant will suffer irreparable injury, whether
substantial harm will come to the appellee, and the effect, if
any, on the public interest.  Schwartz v. Covington, 341 F.2d 537
(9th Cir. 1965); Universal Life Church, Inc. v. United States (In
re Universal Life Church, Inc.), 191 B.R. 433, 444 (E.D. Cal.
1995) (Wanger, D.J.), aff'd, 128 F.3d 1294 (9th Cir. 1997);
Ohanian v. Irwin (In re Irwin), 338 B.R. 839, 845 (E.D. Cal.
2006) (Ishii, D.J.); Wymer, 5 B.R. at 806.

        The burden is on the proponent of the stay.  Irwin, 338 B.R.
at 843; Universal Life Church, Inc., 191 B.R. at 444; Wymer, 5
B.R. at 807.

                                A

        The first inquiry is whether Freidberg & Parker is likely to
succeed on the merits of the appeal.  Here, there are two
hurdles.  First, before there can be an appeal of the

interlocutory order, Freidberg & Parker must persuade the
district court to grant leave to appeal.  The negotiation dynamic
attendant to the balance of the adversary proceeding as it moves
toward trial on the merits of the claim for attorney's fees as to
liability and amount may lead the very busy district court to
conclude that the efficient course is to eschew piecemeal
interlocutory appeals and wait for finality to set in before
grappling with the issues.  This court perceives no better than a
50-50 chance that leave to appeal will be granted.

Second, the merits of the appeal relate to the review of the
rejection of the contention that there is an Article 9 security
interest and to the assertion of entitlement to an equitable
lien.  As to the security interest, the fact that the security
agreement specifically covers only a deposit account that was
never created makes it unlikely that a security interest that
will overcome the chapter 11 trustee's strong-arm powers under 11
U.S.C. § 544 will be discerned on appeal.

As to the equitable lien, the inquiry was fact-intensive.
This court is unaware of any contention that an incorrect legal
standard was applied.  The standard of review of the factual
determinations will be on a clearly-erroneous basis.  Fed. R.
Civ. P. 52(a)(6), incorporated by Fed. R. Bankr. P. 7052; Fed. R.
Bankr. P. 8013 (same).  The decision to impose an equitable lien
is fundamentally discretionary, reviewed for abuse of discretion.
Those are difficult hurdles for an appellant to overcome.

In short, as there were no "close calls" that had to be made
in the course of deciding the matter, it seems unlikely that the
order would be reversed on appeal.

B

The next question is whether Freidberg & Parker would suffer irreparable injury without a stay that would operate to prevent the chapter 11 trustee from utilizing the $4 million fund in the blocked account.

It is plain that no irreparable injury would result if the order is not stayed and the $4 million used by the chapter 11 trustee for necessary estate expenses.  There is no plausible scenario in which CWS Enterprises would be unable to pay the ultimate amount of any amount ultimately awarded to Freidberg & Parker.  Money is fungible.  At the appropriate time, if there is no other source of funding available, the chapter 11 trustee or the person implementing the plan will be able to sell real property that will suffice to pay the ultimate award.

This court rejects the argument of Freidberg & Parker that there will be irreparable harm.  Even in the present difficult economy, there is no hint that the assets of CWS Enterprises, which are on the order of $30 million (the chapter 11 trustee asserts that they have increased in value during the pendency of the case) will be unable to satisfy debts that will total less (perhaps substantially less) than $18 million.

Thus, no irreparable injury will ensue from denial of a stay.

C

The next point to be demonstrated by Freidberg & Parker is that no substantial harm will come to the appellee chapter 11 trustee from the imposition of a stay.  In reality, the contrary is the case.

- 9 -

The chapter 11 trustee and the estate would be materially harmed by not being able to access the blocked account to pay the $3.75 million settlement payment due December 15, 2011, pursuant to the court-approved settlement with another attorney.  As explained in the prior section discussing the requirement of classic supersedeas bonds that damages for delay be covered, the imposition of a stay would necessitate a precipitous sale, without the benefit of appropriate marketing, of real property sufficient to raise $3.75 million by December 15, 2011, which could cost the estate $2.5 million in lost value.

In light of this, it is Freidberg & Parker's assertion that $50,000 tends to support the inference that the request is part of a sly attempt to create leverage by forcing delay. Permissible under the rules of procedure, but too sly to be persuasive.

While one might have been able five years ago plausibly to argue that the chapter 11 trustee could borrow $3.75 million, this court's experience in superintending chapter 11 cases in the current distressed economy leads it to conclude that such financing is not available.

Although Freidberg & Parker argues that the chapter 11 trustee has created his own harm because he should have been marketing property all along, this court is not persuaded. Rather, a sensible exercise of the chapter 11 trustee's business judgment is to await the determination of the total obligations owed before deciding which properties will provide the optimal opportunities for maximizing the value of the estate and the reorganized estate.  Hence, the argument that the trustee is at

1  fault for not actively marketing property is rejected.

2       Freidberg & Parker has not demonstrated that no substantial
3  harm would come to the chapter 11 trustee from a stay.

4                                    D

5       Freidberg & Parker must also demonstrate that a stay will do
6  no harm to the public interest.

7       Here, the public interest is well-stated by the third
8  sentence of Federal Rule of Bankruptcy Procedure 1001:  "These
9  rules shall be construed to secure the just, speedy, and
10 inexpensive determination of every case and proceeding."  Fed. R.
11 Bankr. P. 1001.

12      The proposed stay and the interlocutory appeal are not
13 consistent with speedy and inexpensive determination of the
14 attorney's fee dispute between Freidberg & Parker and the chapter
15 11 estates.  Piecemeal appellate review will not facilitate the
16 process of deciding these cases.

17      There is nothing unjust in declining to impose a stay.  As
18 noted, there are plenty of assets available as a source for
19 payment of whatever sum, if any, that is owed to Freidberg &
20 Parker.  Since ultimate payment plainly is not in peril, justice
21 will not be offended by not imposing a stay.

22      Thus, as with the other three required affirmative showings,
23 Friedberg & Parker has not satisfied its burden of persuasion.
24 The failure to carry the day on any one prong of the standard
25 dooms the motion.  <u>Irwin</u>, 338 B.R. at 843.  Here, no prong of the
26 standard has successfully been demonstrated.

27

28

                                  - 11 -

**CONCLUSION**

In sum, the court concludes that a matter-of-right supersedeas bond is not available to the defendant and concludes that the court should exercise its discretion to refrain from authorizing a discretionary bond and to refrain from imposing a stay pending appeal.  Accordingly,

IT IS ORDERED that the motion is DENIED.

Dated: August 12, 2011.

_____
UNITED STATES BANKRUPTCY JUDGE

-12-

1

## CERTIFICATE OF SERVICE

2

On the date indicated below, I served a true and correct copy(ies) of the attached document by placing said copy(ies) in a

3

postage paid envelope addressed to the person(s) hereinafter listed and by depositing said envelope in the United States mail

4

or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's Office.

5

6

Andrea T. Porter
33 New Montgomery Street, Ste. 290
San Francisco, CA 94105

7

Estela O. Pino

8

800 Howe Ave #420
Sacramento, CA 95825

9

Edward Freidberg
650 University Ave., Ste. 205

10

Sacramento, CA 95825

11

David D. Flemmer
2804 Gateway Oaks Dr #120

12

Sacramento, CA 95833

Daniel L. Egan

13

400 Capitol Mall 22nd Fl
Sacramento, CA 95814

14

15

Bradley Benbrook
David Cheit

16

400 Capitol Mall, Suite 2400
Sacramento, CA 95814

17

Walter R. Dahl
2304 N St

18

Sacramento, CA 95816-5716

19

Randy Michelson
100 Pine Street, Suite 2450

20

San Francisco, CA 94111

21

Dated:

22

8/17/11

23

_____
DEPUTY CLERK

24

Cathy Guyer

25

26

27

-13-

28